The Honorable, the Judges of the United States Court of Appeals for the 4th Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable, the United States Court of Appeals for the 4th Circuit are admonished to give their attention for the Court is now sitting. God save the United States and this Honorable Court. Well, good afternoon everybody.  We have four cases on our calendar for this panel this afternoon. The first case is Yerazuddin v. Montgomery County. And Mr. Dougherty will hear from you whenever you're ready. Good afternoon. Thank you, Your Honor. May it please the Court. In 2011, Yazmin Reyazuddin sued Montgomery County for discriminating against her on the basis of her disability and for failing to provide her with reasonable accommodations. For the next five years, the county vigorously defended the case. It was only after a jury rendered a verdict in Ms. Reyazuddin's favor in February of 2016 that the county relented and afforded Ms. Reyazuddin the principal relief that she was seeking. They transferred to the county's MC311 call center and accommodations that complied with the law. In our system of justice, jury verdicts have consequences. And this Court should hold that a jury's verdict in favor of a plaintiff is a bright line when it comes to deciding prevailing party status. Because the verdict changes the relationship. Yes, Your Honor. So in order to be a prevailing party, do you agree that there needs to be some judicially sanctioned action? Yes, I do. And I believe in this case the jury verdict satisfies that. Even though the jury verdict was zero and the district court denied equitable relief, which we then affirmed? Yes. So as Your Honor just stated, the damages, the monetary damages, is not the only form of relief that Ms. Reyazuddin is seeking. She also was looking for injunctive relief, transfer to the call center, and reasonable accommodations. The county provided both of those after the jury verdict. But the court didn't provide that. The court denied that, right? The court denied that because the county had provided that after the jury verdict and before the evidentiary hearing on injunctive relief. So I'm just trying to understand how that's a judicially sanctioned act and what case law you base that on. Sure. So we're relying on Buchanan and the Supreme Court's decisions addressing prevailing party status. In Buchanan, the court discussed the catalyst theory. And our claim of error here is that the district court found that Ms. Reyazuddin wasn't the prevailing party because she's simply advancing the catalyst theory. This isn't a catalyst theory case. The procedural history here is very different from what was discussed in Buchanan. The jury verdict here separates everything, separates this case from the procedural history in Buchanan. And while the district court didn't actually order the relief, the judicially sanctioned, judicially approved conduct here was the jury relief. Mr. Daugherty, can I ask? So let me ask you this. So if this had been a case where there was no claim for equitable relief, it was simply a claim for monetary damages. And the jury found for your client on the liability prong, but then awarded zero damages. And let's assume for the moment that there is a similar statute that allows prevailing party to seek relief for attorney's fees. What's the result in that case? I believe in that case that the result would be Ms. Reyazuddin wouldn't be the prevailing party. So what's different about your case? We also sought injunctive relief. And that was provided by the county after the jury rendered its verdict. That issue of injunctive relief was very much alive after the jury's verdict. And in a May 2016 status conference, the district court commented on the likelihood that Ms. Reyazuddin would be entitled to injunctive relief based on the jury. You can see that the comments from the district court. So you're saying that the change in legal status was as a result of the jury verdict. That's correct. How do you know that? How do we know that? I mean, yeah, the timeline certainly makes it seem like that. But wouldn't we be speculating? No, this isn't speculation. And I don't there's no need for speculation in this case. So why did the county say we did this because of the jury verdict? No, no. Of course, the county wouldn't wouldn't say that. OK, then don't I need to speculate then? No. The jury found that Ms. Reyazuddin had been discriminated against because she hadn't been transferred to the cul-de-sac. And then the county transferred her to the cul-de-sac. The jury also found that she hadn't gotten a reasonable accommodation. And then she got a reasonable accommodation. Those things are closely tied. There's no need for speculation. Can I ask you a question about the jury verdict? It did strike me that this case is maybe a little bit complicated because the only thing in front of the jury. Right. Was whether the county's activities prior to the first offer of an accommodation, the lighthouse. I'm sorry, I can't remember the exact name, but it's a lighthouse job, whether that constituted whether prior to that point there had been discrimination. And the jury found there had. But I don't see how you can read into that jury verdict. Almost like a declaration that the only way this could be made right was with the transfer to the 3-1-1 center. Well, you know what I'm saying? I do understand what you're saying. And I think the jury considered multiple potential reasonable accommodations in the day before the Columbia lighthouse for the blind. That's it. Thank you. That wasn't presented to the jury because the offer was made so close in time before the trial that there wasn't enough time to do discovery and build a record. Now, I think to your point, Judge Harris, if the county believed that that was a reasonable accommodation, then the county could have assigned her sign this way as to that position after the jury. But tellingly, they didn't. What the jury did, what the county ultimately did was pretty much what Ms. Riazadin was asking it to do, transfer her to the 3-1-1 center, give her a reasonable accommodation. I'm sorry, I really am just trying to work this through. If I'm remembering right, last time we heard this case, the complaint was that transferring her to the 3-1-1 center had not been a reasonable accommodation, right? I don't believe that. I thought that was the argument, that they had transferred her but not made enough other sort of surrounding adjustments to make that work. Right. That the work that she was doing at the call center wasn't everything that all the other people at the call center were doing. Right. So last time we were here, the argument was she did not get the relief she sought. Isn't that right? That the county's transfer of her to the new 3-1-1 call center had not been a reasonable accommodation? Well, that it hadn't satisfied, I mean, there was more that the county could have done, yes. Right. More that they had to do in order, right. So I guess, I mean, maybe this doesn't matter because maybe you think this case should go back to the district court and let the district court figure out whether this transfer was the result of the jury verdict. But it just, it seems, I guess I'm a little bit troubled by the fact that the transfer that you were pointing to is kind of the part where she gets what she was asking for. When she got it, she went to court saying, this is not what I'm asking for at all. Well, so I think, I don't think it's, she didn't say this isn't what I'm asking for at all. She said there's more. She said it's not a reasonable accommodation. It's not a complete accommodation. It didn't allow her to do everything that everybody else in the call center was doing. Okay. Right. But I guess you would say that it is, it was some relief. It just wasn't complete relief. Is that your point? I think that's a fair way of categorizing it. And I think that that goes, that doesn't bear on the question of prevailing party status. That's more the follow up question about the appropriate appeal. In this case, Ms. Raisman is the prevailing party because she has a jury verdict and she obtained relief after the county transferred her to the call center. And the district court only denied injunctive relief because of that transfer and the accommodations that were provided. Was the jury verdict an enforceable judgment? The jury verdict in and of itself is not an enforceable judgment. But it is the product of it and it does bear the sanction of judicial action in this case. And that's exactly what needs to be found. That phrase, in fact, comes from Justice Scalia's concurring opinion in Buchanan where he discusses why court approved settlements and consent decrees are appropriate and for a prevailing party status. When there isn't a determination, a judicial determination of the merits. In this case, we have a judicial determination of the merits. We have the most complete judicial determination available. That's a jury verdict after a jury call. Mr. Dougherty, I will say that it does seem kind of odd to me that had the jury in this case awarded $1 in nominal damages that we wouldn't be here arguing about this point. The only question would be what the extent of attorney's fees should be awarded. And, of course, in considering that, the judge could consider the amount of the verdict itself. But because the jury awarded no monetary relief, we're left with this argument about whether or not the jury verdict was, I know you don't want to call it the catalyst, but actually it was the judicial imprimatur that prompted the resolution that was finally arrived at. I have two questions. One, the first one is, and this is not necessarily relevant to the appeal, but why was it that the jury wasn't allowed to award nominal damages in this case? I don't know that the jury wasn't allowed. I don't know that they were requested, honestly. Okay. Was that just a tactical decision? It may have been. Honestly, I wasn't part of the trial team at the time. I don't know the full reasoning behind that decision. But we don't have a nominal damages award, and so we are in this slight predicament. But I don't think the analysis here needs to be any different than it would be if we were dealing with a monetary. If Ms. Glyazgin had received $1 in nominal damages, then the question is, did she get all of the relief that she was asking for, and how does that bear on the ultimate award of attorney's fees? The same question here, just because we're dealing with injunctive relief, but the question is, did she get what she was actually looking for as a result of the jury verdict? I don't think that that analysis is any different simply because of the relationship. I mean, I do understand what you're saying, but I think there are other parts of Buchanan that suggest that the question is not, did she get what she wanted as a result of the jury verdict, but did she get what she wanted as a result of an enforceable court judgment? And I understand your argument that the facts here, the procedural history is different than Buchanan, but it's not obvious to me what you want us to do, I guess, with that language. That really does seem to suggest that the line it's drawing is between any kind of a voluntary action versus an action that is court-required, where you could go to court and bring a contempt action if the defendant didn't do it. We want this court to hold that that jury verdict in this prevailing party inquiry is a bright line, and that once the defendant goes past that time, they're not entitled to any presumption of their conduct. If they take actions to comply with the jury verdict after the verdict, that's no longer a voluntary action. And that's what we'd like to do. So you're saying the opposite of voluntary is not an enforceable judgment. It's an action, but not an action taken as a result of the jury verdict, because that's a catalyst theory. So it's not required by the jury verdict, but it is what? Well, in this case, the conduct would have been required by the jury verdict. We know that based on the district court's comments from the May 2016 status comments. You can see that at Joint Appendix 72. The district court specifically references the need to make sure that the county, quote, gets it, and asks for additional discovery to make sure that the district court could craft an appropriate, an injunction that would provide Ms. Reazan with accommodation. Mr. Buchanan, can I just, you're just about out of time, but I do want to ask you this, because I agree with Judge Harris that Buchanan is a little bit troublesome for you. But on the other hand, wasn't there a language in Buchanan, particularly in the form of a footnote, that seemed to suggest that, and in fact, Justice Scalia, in a separate concurrence, made this very point that it's not the case that the court in that case was approving, as he put it, approving the practice of denying attorney's fees to a plaintiff with a proven claim of discrimination simply because the very merit of his claim led the defendant to capitulate before the judgment. Justice Scalia went on to say that's not this case, and then cited with approval an Eighth Circuit opinion where the very result that you seem to be suggesting here was obtained there, and the courts seem to approve of that scenario where you have a jury verdict in the case, even without a final judgment. That's correct, and I'll just, I think that's, yes, that's correct. I'll also just note that the result that we're asking for in this case is consistent with another decision from this court. That's the Petrollo case that we cite in our, we discussed pretty extensively in our reply brief. In that case, the court, this court, found that the plaintiff was a prevailing, was the prevailing party on the basis of a jury verdict and that failed to award damages. And in that case, she didn't see conjunctive, the plaintiff didn't see conjunctive relief, but declaratory relief, and that was also denied. So the existence of a jury verdict as a bright line in prevailing status inquiry, prevailing party inquiry, is well-founded in this court's prior decisions and in the Supreme Court. All right, thank you, Mr. Dougherty. You've got some time left for rebuttal. Ms. Cain, we'll hear from you. Thank you, Your Honor. May it please the court. The decision of the district court denoting plaintiff, the attorney, attorney fee should be affirmed because the district court correctly found that the plaintiff here, Ms. Razadin, is not the prevailing party. To be a prevailing party, for purposes of recovering attorney fees, the plaintiff must prove that there was, one, a material change in the legal relationship of the parties, and two, judicial imprimatur on that change. If the plaintiff proves these two things, then the court has discretion to determine whether or not to award attorney fees. In this case, plaintiff has proved neither prong. She has not proved a material change in the legal relationship of the parties, nor has she proved that there was any judicially enforceable relief. In fact, she has obtained no judicially enforceable relief in nine years of litigation. What about the jury verdict? That is something that was lacking in Buchanan, but we have here. Are we just to ignore the jury verdict? It means nothing? Well, Your Honor, the jury verdict is a factual finding, and the jury verdict occurred in February of 2016. The jury verdict was based on a claim for past discrimination that the plaintiff specifically ended as of September of 2015. The reason the plaintiff ended her claim for compensatory damages for her emotional distress for the alleged violation of the Vocational Rehabilitation Act was because she did not want the jury to hear about, or there had not been sufficient discovery, on the detailed job to the Columbia Lighthouse for the Blind, the collaborative job that was offered between the county and the CLB. So the jury found that she had not been reasonably accommodated in the February 16 trial, based on her claim that ended in September of 2015, and there was no consideration of whether or not the CLB offer was a reasonable accommodation. Which would account for the zero dollar verdict, because the discrimination had ended? I'm not sure I understand the court's question. That would explain, perhaps, why the jury found liability, but didn't award any damages because the discrimination had ended? Well, we can't read what the jury did, why the jury did what they did, Your Honor. I don't want to speculate on that. Was it in front of the jury that that discrimination had ended? Well, the plaintiff stopped her claim for damages as of September 2015, and why that became important was because, to get back to the court's question, the jury came up with a zero award, and the court did not enter judgment on the jury verdict at that time. So, the factual finding of the jury remained a simple factual finding until August of 2017, when the court had completed the trial on injunctive and declaratory relief, and at that point in time, a judicial pronouncement was made based on the jury verdict. So, it was simply a factual finding at that time, and the court needed to take more discovery. The plaintiff said she needed discovery on the CLB job and whether or not it was a reasonable accommodation, and the court also wanted discovery on the status of the technology at MCC. So, let me just make sure I understand. So, opposing counsel connected the change in legal status, that is, the county finally giving her what she said she wanted, tied that to the jury verdict, and when I asked about, isn't that speculation, he said that the timing of the sequence of those events makes it not speculation, that the change in legal status was as a result of the jury verdict. But if I'm understanding you correctly, the jury verdict was a year before the county changed its position? Is that right? The jury verdict was in February of 2016. In September of 2016, the county notified the plaintiff that she was being transferred to MC311, and that took place in October of 2016. The trial on equitable relief, there was discovery going on for that trial, and the trial on equitable relief took place in April of 2017, and then the court issued its memorandum of opinion in August of 2017. So, as far as the timeline goes, Your Honor, in answer to your question, had the jury verdict in February 16, the transfer in October of 16, the equitable relief trial in April of 17, and the judgment on the jury verdict saying that there was a finding that judgment was entered in her favor in the amount of zero for her compensatory damages took place in August of 2017. So the entry of the jury verdict was actually after she was transferred? Because she was transferred in October, but the entry of the jury verdict wasn't until the following August, it sounds like. That is correct. So perhaps it's not as intrinsically tied to the jury verdict as might appear at first blush. That is absolutely correct, Your Honor. Well, you know, I'm not sure. Isn't that just a function of the process and procedure in this case? Because it was inevitable, wasn't it, that there were going to be further proceedings here because the claim was always about money damages and some form of equitable and declaratory relief. So it's not like the county, armed with that jury verdict of zero, could simply walk away and say, you know, and do a victory dance and say we're done. It was always contemplated that some further action was going to be required. And as I recall, Judge Blake in this case made it very clear that he thought the plaintiff was entitled to some kind of declaratory and or equitable relief. The only question was what was going to be the form of that relief. And to your credit, I'm not criticizing the county for doing this. You stepped up and made the accommodation that the district court eventually thought was reasonable. But I guess I'm troubled by the fact that there is a jury verdict in this case. And that was, in the end, what prompted the county to act. And maybe that's saying the same as that was a catalyst. Maybe that's the end of this case. But why doesn't the jury verdict make all the difference here? Well, it does not because of the trilogy of Supreme Court cases and the law and prevailing party status. Do we have any case, Supreme Court case, that says a jury verdict is insufficient by itself to warrant an award of fees in a case like this? A jury verdict is nothing more than a factual finding until the court. I'm not sure you answered my question. Do we have any case, Supreme Court case, that says that a jury verdict is not sufficient to allow for at least consideration of an award of attorneys' fees in a case like this? A judicial pronouncement that is of discrimination under Hewitt v. Helms court's indulgence. The key holding in Hewitt v. Helms was that the plaintiff must obtain some judicially enforceable relief on the merits. The moral satisfaction of knowing that the plaintiff's rights have been violated is not enough. You need an enforceable judgment. That was in 87. Then in 92, Farrar court came back and reiterated and repeated the holding in Hewitt and said, to be sure, a judicial pronouncement that the defendant has violated the Constitution unaccompanied by an enforceable judgment on the merits does not render the plaintiff a prevailing party. Of itself, the moral satisfaction that results from any favorable statement of law cannot bestow prevailing party status. Can I ask you a question about Hewitt v. Helms and that whole moral satisfaction line of cases? I find this case very complicated, but I think the argument that the plaintiff is making here is not that the moral satisfaction of the jury verdict alone would be enough to make her a prevailing party. She's saying it's the combination. It's the jury verdict, that's the judicial imprimatur, plus the fact that I got the job. I don't think she's saying if it had been just the jury verdict. I think that's more like Hewitt. All you get is a declaration that you are right as a matter of law. On the court, I agree with you. In Hewitt, it says that kind of moral satisfaction does not make you a prevailing party. But I'm not sure we have a case that says a judicial declaration or a jury verdict plus getting the relief you were asking for is not enough to make you a prevailing party, unless you read Buchanan sort of broadly. Well, I was coming to Buchanan next, Your Honor, and you anticipated my argument, and I hope I answer the court's question. Buchanan, as the court knows, said that there must be a material change in the legal relationship of the parties that directly benefits the plaintiff, and there must be judicial imprimatur on that legal change. And further, Buchanan, importantly, excluded the catalyst theory and said the catalyst theory is not a permissible basis for the award of attorney fees. The court went on to say that enforceable judgments on the merits and court-ordered consent decrees create the material alteration of the legal relationship of the parties necessary to permit an award of attorney fees. The court, in addressing the catalyst theory, held, quote, a defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change. Our precedents thus counsel against holding that the term prevailing party authorizes an award of attorney fees without a corresponding alteration in the legal relationship of the parties. But the legal relationship did change after the jury verdict. Wasn't the jury verdict at least explicitly recognized some ongoing illegal, well, at least past discrimination? Didn't that inherently change the legal relationship between the parties such that it led to the county transferring her to the job she wanted or accommodating her in the manner she wanted? The transcript, Your Honor, or the joint appendix has a copy of the transfer letter and why she was transferred to 311. A plaintiff has asked the court to speculate on why she was transferred. Okay, what's the JA cite? Maybe I can find it. Is it 76? Yes, it is, Your Honor. J.A. 76. And what did you want to direct attention to a J.A. 76? Well, it's 77. You are right, it is 77. The purpose of your transfer, Your Honor, it's in the final paragraph. It says the purpose of your transfer is to improve the efficiency and effectiveness of county operations. This transfer will benefit you and the department. And it goes on to say that... Yes, Your Honor. The county, as this court has said before and as Judge Chasnow said, the county always recognized it had to accommodate Ms. Rayazadeen. And over the course of time, attempted to accommodate her in many ways. So over that five-year period of time, initially after her colleagues were transferred to 311 and she wasn't, the county offered her a full-time job at the Children's Resource Center. She rejected it. Then the county offered her a job at the Aging and Disabilities Unit, which she accepted. But she said it was a lack of meaningful work by the time she got to the jury trial. The county also, before the jury trial, had attempted to offer her a job or had offered her a job, which she rejected with the combination between the county and the Columbia Lighthouse for the Blind. And then after the jury verdict, she was transferred to 311. So all along the way, the county has been trying to accommodate her. It's not that this jury verdict just made the county jump into action. There had been a continuing process. And as you know from the ADA or the Vocational Rehabilitation Act, there's a public policy that wants an employer to engage in the interactive process and try to make an accommodation that will be acceptable for the plaintiff and for the employer. And the county did that in this case. Can I ask you a question? I just want to understand how much of your position sort of turns on the facts of this case and how much is sort of a more legal position. So just hypothetically, and I understand it's not this case, what if there had been like maybe let's call it a bench trial. And at the end of the trial, the court issues a declaratory judgment, no damages, no injunction, just saying to this government defendant the failure to give this hypothetical plaintiff the particular accommodation she requested violated the Rehabilitation Act. Declaratory judgment. The next day, the government defendant gives the plaintiff that accommodation. Might that plaintiff be a prevailing party? I think that would be a different circumstance, Your Honor, and we don't have a declaratory judgment in this case. Well, I totally understand. That's why I started my question by saying that's not this case. But I'm trying to figure out if you think that person might be a prevailing party, that suggests to me that maybe Buchanan is not as broad as we think, because there's still no judicially enforceable relief. We're just saying what I think is sort of the common sense insight that when a government defendant honors a declaratory judgment, which we as courts say all the time we expect them to do, we don't have to issue an injunction. Everybody knows a government defendant is going to honor a declaratory judgment, that we don't really consider that voluntary behavior. Well, I think under your hypothetical, there's different issues here. And one is the past discrimination, and another is the past discrimination was found by the jury for not reasonably accommodating the plaintiff up to September of 2015. OK. So that was where I started. So your argument is not that Buchanan wouldn't allow anything like this. It's that on the facts of this case, this plaintiff can't show that she got the relief as a result of the jury verdict. That's what you want to rest on. If she could show it, if it had been the next day and the county had acknowledged, say the county says in the letter, all right, all right, we're listening to the jury verdict, we're transferring you, then would she be a prevailing party? Your Honor, that's still a voluntary change in the conduct of the county, which under Buchanan is the catalyst theory, and does not entitle the plaintiff to attorney fees. So in both cases, I would say that Buchanan does not allow an award of attorney fees. Although one may be closer. But in Buchanan there wasn't an adjudication on the merits. And here, and in Judge Harris's hypothetical, there is. Well, in here, there was a factual finding of the jury, and then the voluntary change in the conduct of the county. Then came the award of the court, giving her zero, entering judgment in her favor on the compensatory damages of zero, and denying her claims for equitable relief on the claims for an injunction and a declaratory judgment. And there was no basis for a declaratory judgment. And she didn't prove her case with respect to the need for injunctive relief, and this court affirmed that on appeal. Ms. Cain, let me, can I follow up on that? So on the, with respect to this issue of declaratory relief, once the jury trial was over, was there any question that the court was going to grant some kind of equitable relief absent a resolution by the parties? Yes, there was a question. That's why we put it in trial. I mean, the plaintiff quoted something in her brief saying how the court, you know, trying to point to the language of whether the county gets it, I think is what they said. But she also said in there the information she needed so she could consider their request and whether or not it was appropriate. Because things may be different, and they were different at the time of the hearing on the claims for equitable relief. I guess what I hear you saying then is that you agree with Judge Harris that the jury verdict simply isn't causally related. You seem to be, it seems to be like a bifurcated claim. It doesn't matter what the jury said. There was still the question as to whether or not this plaintiff was entitled to any form of equitable relief. Is that your position? She was, if I'm understanding the court's question, her jury verdict of zero compensatory damages did not entitle her to attorney fees. No, no, but that jury verdict also had a finding of discrimination, and we've talked about this. It appears to have been a finding based on past discrimination. And my question is whether or not that finding had any, imposed any obligation on the county to grant some form of declaratory relief. Whether the only question at that second hearing was what that form of relief was going to take. Now I understand the court's question. I apologize. No, that the purpose of the jury trial was on her claim for compensatory damages for emotional distress for the discrimination she had experienced. Stop. So at the end of the jury trial, the jury said, yes, there was discrimination, and in respect, in response to your claim, you get zero award. Her second request was, I need injunctive relief. I want you to move me to 311. I want the county to make all of the software at 311, all of the maps, everything accessible. Second trial, second consideration. She went to trial on that, and her claims were denied. So there is no basis to award her under any attorney fees under that. Does that answer the court's question? Yes. The other point that I, I guess it's a question. You're right. The judge has now denied a declaratory judgment, but that was in part because she thought that the jury verdict was sufficient for that purpose and that issuing a declaratory judgment would be superfluous. So it seems somehow the plaintiff is now being punished or penalized because the judge wasn't willing to go as far as she would otherwise have gone, having suggested that the jury verdict was sufficient for that purpose. So how are we supposed to take that? Well, Your Honor, that ship has sailed because what we have here is she already appealed the court's denial of her claim for injunctive relief and the denial of her claim for a declaratory judgment. And this honorable court affirmed the district court and said those were appropriate findings. There was no abuse of discretion. Right. I know that because I wrote the opinion and the reason why we affirmed, at least the reason why I affirmed, was because the district court judge said, and we agreed with her, that that was superfluous, meaning that the jury verdict was sufficient. So, Your Honor, it's still, we go back then to Buchanan and Farrar and Hewitt and we look at what did the plaintiff obtain here? What judicially enforceable relief did she obtain? And it's none. The change in conduct was voluntary by the county and she's not entitled under the catalyst theory to obtain attorney fees as a result of that. Okay. Thank you very much, Ms. Cain. Mr. Dockery, you've got some time for rebuttal. Go ahead. Your Honor, thank you. There was some discussion of Buchanan and how broad it is in the Supreme Court case law on this issue. There is no Supreme Court decision that addresses this particular set of facts where there is a jury finding, jury verdict, and then conduct consistent with the verdict after that by the defendant. Buchanan is not broad enough to cover these circumstances. Buchanan, in fact, was a very narrow decision. It addressed what I'm going to call pre-merits mooting based on the finding of, or based on the existence of a non-frivolous but potentially meritless lawsuit. The defendant changing its conduct based on that. That's not what we have here. We have a jury verdict and that verdict is entitled to significant weight. Can I ask you a question? Sure. And this came up when I was talking to your colleague. So, you're not resting, if it had just been the jury verdict, that would not be enough to make you a prevailing, or to make your client a prevailing party, right? It's the jury verdict plus the transfer? Correct. I mean, I can't, quite honestly, I can't conceive of a situation where there would just be a jury verdict. We need the transfer to affect the change. Either the county was going to do that, like it claims, and we dispute that. I'm sorry, if it had just been the jury verdict and the county had said, whatever, we're not doing anything, and that had been the end of it. Then we know the district court would have ordered the leave. And what if the district court didn't? Consider it a hypothetical. What if there's a jury verdict awarding zero damages and that's the end of it? Do you think you're a prevailing party? With the claim for injunctive relief still out there? Yeah. So, you're saying you already answered this because if you didn't ask for injunctive relief, you wouldn't be a prevailing party? Correct. Exactly. Okay. So, you want us to say that it's the combination of the jury verdict plus any conduct that's consistent with that verdict? What I'm trying to get at is how does the transfer have to be related to the verdict in your mind? Fill out that sentence for me. It's the jury verdict plus conduct that is... Is, I think, consistent with the verdict that is, in very simple words, does what the plaintiff has been asking them to do. I don't, I mean, you know, that... Because what I'm trying to figure out is if you're right, do we remand to the district court and say, look, you misunderstood the standard, but Canon is not as broad as you think. So long as this conduct was caused by your jury verdict, that's good enough. Now, you figure out whether it was caused by the jury verdict. Is that where we are? No. No. So, the court... No. Okay. This court should make a finding that Ms. Rehazen is the prevailing party. Once that finding is made, then it goes back to the district court simply to determine the amount... Do we have to decide that the transfer was caused by the jury verdict to make that finding, in your view, or not? I think so. But I think that's a question of law. I think that's a question that you can... That's a line that should be drawn in this case. But caused by is... Caused by... Caused by is the standard. Okay. I don't know if it... It's consistent with. Caused by, consistent with. I think those are... Well, those are two different things. You know, I think consistent with is sufficient in this case. Mr... So, if... Go ahead. No, go ahead. You go ahead. All right. So, if the county had not made the transfer after the jury verdict, then where would you be? Then we would... You know, I think... I don't know for sure where we would be, but I know that based on the district court's comments at the May 2016 hearing, there was a significant likelihood that we would have had... You know, the district court would have ordered injunctive relief. And that Ms. Reisman would have been transferred and she would have been provided with an appropriate accommodation. And just to fill out the universe of possible scenarios here. So, based on this notion that the jury verdict was intended to remedy past discrimination, what if the jury had come back with no liability on that past discrimination? Would there be a need for a trial on relief going forward in your case? And so that the jury found there was no disparate... No discrimination, right? And I think that's... That's the end of the case, right? Yes. Okay, so it's the only reason why you had a second part of the story was because of the jury verdict, right? That's correct. And, right, that's exactly right. At the time of the jury, the jury made factual findings. It determined that Ms. Reisman had been discriminated against, but she had not received an accommodation. That led into and very, you know, kept alive the claim for injunctive relief. And Judge Diaz, I think you mentioned, you know, in your question when this came, that unique procedural history that occurred after. There was a significant period of time after the jury verdict and before judgment was entered. And that was largely due to the fact that the district court needed to figure out how Ms. Reisman was going to be appropriately accommodated. She ordered discovery to satisfy the district judge, ordered a period of discovery to make sure that she had the necessary information to craft... But the district court itself, the court that you say was going to do all this if the county hadn't done it instead, that same court has said your client is not a prevailing party. Correct. So I think that analysis is... I can't get my mind around that. But we think that that analysis is incorrect. That's why we're here today. Right. I mean, and I see I'm out of time. I would love to discuss that. Well, no, Justice Thacker had a question, so you can finish answering it. Yeah, I'm finished. Thank you. Okay. All right. Well, thank you very much, counsel, for your arguments. The case has been submitted. We would typically come down from the bench and shake your hands. Obviously, we can't do that, so we'll have to do it with a virtual handshake and a thanks for your service to the court. So thank you very much, and we'll move on to our second case.
judges: Albert Diaz, Stephanie D. Thacker, Pamela A. Harris